Your Honor, this is the final case of the morning call, 208-738, people in the state of Illinois v. James Gibson. On behalf of the outlaw, Ms. Vicki P. Kouros. On behalf of the athlete, Ms. Joan M. Kripke. Good morning, counsel. Ms. Kripke. Ms. Kouros. Good morning, your honors. May it please the court. Counsel. Again, my name is Vicki Kouros, and I represent the appellant here, Mr. James Gibson. On appeal here, we raised four issues in the brief, and this morning I'd like to briefly discuss issues number one and number three. And then spend a little more time talking about issue number two. Argument one concerns the sufficiency of the evidence of Mr. Gibson's conviction for unlawful possession of a weapon by a felon. We believe that this court's not even year old decision, people v. Cicciarillo, controls the outcome of this case, as the facts in this case mirror those in Cicciarillo. And based on Cicciarillo, we would ask that this court reverse Mr. Gibson's conviction for unlawful possession of a weapon by a felon, based on the accountability theory. The next argument is issue number three, which the state has actually already confessed error on, that Mr. Gibson's 27-year sentence for aggravated kidnapping is violated with a proportionate penalties clause. The only real contention here is whether the form of relief. We ask that for the sake of judicial economy, that this court reduce Mr. Gibson's sentence to 12 years by vacating the 15-year firearms enhancement. And again, this 12 years is not just an arbitrary number. The trial court explicitly said that it sentenced Mr. Gibson to the 12 years for the actual offense, but by statute had to tack on the 15 years. And so for this reason, we would ask the court to simply reduce Mr. Gibson's sentence for the two counts of aggravated kidnapping. Do we even have jurisdiction to consider this appeal? Yes, in fact, your honors have already decided that you have jurisdiction. We had filed a motion to establish jurisdiction before any briefs were filed, and this court determined that based on revestment, this court does have jurisdiction. So yes, you do. You have jurisdiction because you said so. So now why shouldn't we remand? The trial court sentenced the defendant for two other offenses at the same time. Right. And so why shouldn't the trial court have the opportunity to resentence the defendant? Right. I mean, there's certainly nothing to preclude you from remanding the case for another sentencing hearing, but because during, after a full sentencing hearing, the court decided on each offense. And the 12 years is actually, is consistent with the other offenses, the other class acts offenses, the armed robbery. And the court also noted that it was taking into account the sentences for the co-defendants, which were 12 and 15 years. So again, your honors can send it back or not, but for the sake of judicial economy, I think it's pretty clear that the trial court sentenced Mr. Gibson to 12 years for, after looking at all the evidence. Turning to issue two, that was the trial court's failure for failing to instruct the jury on the necessity defense, where there was at least slight evidence to support that affirmative defense. As a preliminary matter, we would ask that this court consider the issue de novo. We cited Pingel v. Everett, which deals with an affirmative defense instruction. And in that case, the Supreme Court decided that reviewing whether or not there was at least the evidentiary minimum, that was a matter of law. So we would ask that this court apply the de novo standard. And then turning to the necessity defense itself, in this case, the slight evidence that supported that instruction was Mr. Gibson's testimony that he participated in the events that unfolded because he was essentially, he was threatened that he had to do this or else, I think the quote was, don't make us come looking for you. And in his mind- Was it looking for him or was it the safety of his family that he was concerned about? Well, he was concerned about both, but especially with that idea of them coming to look for him and knowing where to find him, that being his home where he lived with his infant daughter and his grandfather. In his mind, that signaled that they would come after and do something bad to his family. This was an aggravated kidnapping with firearms, and as one of the co-defendants said, if we were going to shoot you or murder you, you'd already be dead. The crimes that were established were very serious, and there was jeopardy or fairly good probability that it could have escalated into something far worse than it actually, that happened. I don't recall any testimony from the defendant that indicated that having to find him would result in either egregious bodily harm or death or kidnapping for either he or his family. And when you talk about necessity, you're talking about it's the lesser of two evils. Correct. So where in this record is it established that the lesser of two evils is that if I'm analyzing this, I'm saying the lesser of two evils is I did this because I had a reasonable belief that my family was going to be murdered or kidnapped or beaten to a pulp. And I don't think he testified to those things. He testified to what essentially you said, which is, you know, you better do this because we know where you live or something like that. So please explain how the level and nature of the crimes that he committed should be held to naught on the basis that there was something that could have happened that would have been much worse. I understand. Well, this notion of great bodily harm or death is actually a consequence that's more related to the compulsion defense. And necessity only requires that one harm is greater than the other. In this case, the two harms were, you know, participate in what we're doing, which is taking this truck and taking these delivery men with us, or don't do this and we are going to come looking for your family. And again, this is in Mr. Gibson's head that they were going to do, I think he said, quote, do something bad to his family. So the two harms there are either, you know, take this truck. And again, there was the evidence suggests that because the delivery men were complying with everything that they were being demand of, that they wouldn't be harmed. So that's exactly the situation that Mr. Gibson was at. As long as I go along with this, nothing bad is going to happen to my family. Well, the delivery men didn't really have a choice once they were accosted. But didn't Mr. Gibson have opportunities when he wasn't under observation where he could have done something as simple as make a phone call and tell his family to get out of the house? Whether or not there was an opportunity to notify somebody else, I mean, I think that doesn't necessarily preclude the instruction to be given to the jury. And then the jury determines whether or not there was that opportunity. Again, we're only looking for at least a slight evidence to support the tendering of the instruction to the jury. But the other thing, too, is that they told him, you know, he was the whole time he was operating under this threat and this impression that if he didn't do what they said, that they were going to do something bad to his family. They were armed. He thought, you know, if I try to run away, they're going to shoot him, which is why he didn't run away in the first instance. And again, looking at the evidence, the crimes of aggravated kidnapping and armed robbery were really committed in those first few moments of when the crime was unfolding. So everything that he did, like once he was in the car and driving back into Chicago or, you know, trying to get back to his home, that kind of already happened after the crimes were arguably committed. So – and when they were committed, he was operating under the threat that if I don't do this, they're going to come after my family, whether they would – Well, that makes it even more – why didn't he – once the crimes were committed, why didn't he just say, I'm out of here? He was. He was out of there. He dropped off – No, he actually took a TV up to somebody's wife. Well, that was after he got a call, again, from Wilson – I think it was – again, I apologize. It was either Wilson or Moore calling – if I could just back up to establish the facts here. Once they took the delivery truck and Mr. Gibson was following in the van, the truck was stopped by the – State trooper. State trooper, right. At that point, Mr. Gibson thought, all right, I'm out of this. And he let the delivery man that was in his van out, and he was continuing into Chicago. Again, he wasn't familiar with the area, so he was trying to get his grounding and get back home. And at that point, he got a call from either Wilson or Moore saying, where are you at? You know, and Mr. Gibson was kind of nonplussed, thinking, wait a minute, you just got stopped. He's like, oh, we got out of that. So you're going to meet us at Canal. Again, don't make us come looking for you. Once they did meet up at that location, then I believe it was Wilson got into the van with Mr. Gibson and said, we're going up to Moore's house, showing him his gun, saying, you're doing this. And then, again, Mr. Gibson felt that he was a hostage at that point. And that's why he continued on to Mr. Moore's house. If what you say or what your client says is true, then why would the codependent use subterfuge? Why wouldn't the codependent just stick the gun in the guy's nose and say, come with me, instead of saying, I got a job, and then saying something like, well, if I told you there was going to be an armed robbery, you wouldn't come? Well, that would have required them, you know, storming into his home in the middle of the morning saying, come with us. It was much easier for them to lure him that morning. I mean, this is a moving job. That was their business. That's what they did every – that's what they did together. So it was easier for them to say. When you said that's what they did together, I believe the record reflects that they were business partners or associates? Right. They had a moving business together. So that morning it was, help me with this moving job. And it wasn't until, you know, they were in the van following the delivery truck that Wilson, you know, finally revealed this isn't a moving job, it's a robbery. I didn't tell you because I knew you wouldn't go along with this. So, you know, he knew that he didn't want to have any part of it. So he had, you know, if they needed another driver or whatever they needed him for, they had to do that by tricking him. So, and again for the necessity part of it, you know, it's clear from the evidence that were pretty much uncontradicted that Mr. Gibson had really no – was without blame in developing the situation. He was merely following the orders of Wilson and Moore and had no control over what they were going to do. And secondly, that, you know, he had this belief that he had to do this or else his family would be harmed. Now, whether or not that was a reasonable belief really wasn't up to the trial court. That was up to the jury. All you need is slight evidence. Did the defendant ever offer to testify against the other two? The other two defendants pled guilty. I don't know what the situation was. Why didn't the fourth one pled guilty? You know, when the defendant was taken into custody, did he offer to become a witness on behalf of the state? The record doesn't let us know. And again, because Mr. Gibson's testimony constituted that slight evidence necessary for an instruction, the court was – committed a reversible error by not so instructing the jury. So, if there are any more questions, we would ask that this court first reverse Mr. Gibson's conviction for unlawful possession of a weapon by a felon and to reverse the remaining convictions and send this back for a new trial. If it doesn't go back for a new trial, we would ask that this court then reduce Mr. Gibson's sentences for aggravated kidnapping to 12 years and, of course, credit him the one-day oath for the pre-sentence credit. On the sufficiency of the evidence charge, you believe that People v. Churcherillo is dispositive. Yes. Is that correct? Correct. And the holding of that case was specifically that? Because the state did not – because the state had – the state's theory of the case was that the defendant didn't actually possess the weapon, but the co-defendant did, and so they charged the defendant with unlawful possession of a weapon by a felon based on accountability since she didn't actually ever have possession of the gun. But at trial, the state didn't prove that the co-defendant was a felon, was a convicted felon. Instead, they introduced evidence, like in this case, that the defendant was the felon. But under pretty clear law of accountability is that first you have to prove the case against the principle, and then the next inquiry is whether the defendant aided, abetted, or attempted to aid in the commission of the offense. So accountability aspect of it. Exactly. So first you have to prove the case against the principle, and then find the defendant accountable for that conduct. So, again, the exact same situation happened here. Instead of proving the co-defendant's felony conviction, they proved the defendant's where it wasn't really – it wasn't his. Again, Churcherillo states that it's the felony status of the person actually possessing the weapon. Mr. Churcherillo was a non-felon who was found guilty of possession of a firearm by a felon based upon accountability of a felon who possessed a firearm, which is different than our case because here we have a felon who was found guilty based upon accountability of a non-felon possessing a firearm. Right. I have no questions.  Thank you. Ms. Quarles? Good morning. Good morning. Joan Kripke on behalf of the people of the State of Illinois Council. I got this reversed. I'm sorry. I apologize to both of you. I didn't read it in order underneath. Please forgive me. I'm sorry. The first thing I'd like to address would be the jurisdictional issue that we raised in a motion after we did not dispute it when it was originally brought up by the defendants. And I did note that in my final plea for relief, I did not ask the court to dismiss for jurisdiction. And that's error. Maybe I did it because I was thinking I was only adding it on to repeat the motion. But bottom line, we are asking the court to dismiss for lack of jurisdiction. There is no revestment in this cause. And the reason there is no revestment, you have to go back and look what 606B says, what the Supreme Court Rule 606B says on how an appellate court gets jurisdiction, is vested with jurisdiction. There's two ways. First of all, there has to be a timely notice of appeal filed after the final judgment order. Excuse me. Or the filing of a timely post-judgment motion. And after that is resolved, the filing of a timely notice of appeal. And the problem that we have in this case is that the post-judgment motion was not timely filed. And the defendant conceded that. It got lost on somebody's desk, whatever. But we don't think revestment occurred in this case for the following reason. You have to go back to the early revestment cases, because as the cases have come down, they've sort of picked – Cherin picked language and brought it around, but they haven't looked at all of the language. The main case that is looked at is Sears v. Sears. And in that case, the court said, sorry, no revestment. In Sears v. Sears, one of the two Sears parties came in with a motion attacking the final judgment. The other party argued against them even revisiting the issue. They never got to whether the judgment was okay or not okay. They came in and said, sorry, but we don't know what they said. But they came in and they argued against that. And so what the Supreme Court said is there's no revestment here, because they didn't even get into an argument about whether or not the merits of the original judgment were okay. And the other case that you have to look at, then, is Kading. The people v. Kading. And what Kading says is this. Not only do you have to have both parties participating in an attack on the original judgment, but both parties have to agree that the original judgment is bad. And the purpose – and why do you have to have that? Because the purpose of revestment is very limited. It's there to allow the trial court to resolve an issue where the parties go, oh, you know, we have a problem here. There was a sentencing error. There was some other kind of error. Rather than to have this go up to the appellate court for them to resolve, we have the facts before us. Let us try and fix this here. And so that's when revestment occurs. If we allow revestment in a case such as this where they said, oh, you know, we're sorry, we're really late. And what happened in this case was the ASA came in and didn't say the court doesn't have jurisdiction. All the ASA said was, I'm sorry, I think this court should uphold its original judgment. Now, is that technically an attack, adjoining in an emotion, an attack on the judgment? Well, yes, but he's not getting to the merits of it, and he's just saying uphold it. He's not disagreeing with it. That element, when you look at the case of Zoff and Gargani and Montiel that have come out of, I don't know about Gargani, but Zoff and Montiel and Menitti, which have come out of this court, what you have to look at is, did the people who are coming in on the revestment, did both parties want to overturn the judgment below? That's what's key, and that's what's sort of gotten lost in the shuffle over time. But did the state in this case ever say after everyone noted that this was untimely? No one ever noted it was untimely. Oh, yes, you did. I'm sorry, I'm sorry. They did. Yeah, okay. But after that was noted, did anybody from the state say, I'm not going to participate here, I object to this? No, the state didn't say that. But look at the part, did they have, quote, unquote, active participation, only to the extent that they said judge, uphold the original judgment. There are two parts to it. But that was after defense argued, and you, the state, not you, but the state was responding to that argument. Right, should they have said, judge, you don't have jurisdiction, and then come in and said, judge, we have nothing to say anymore about this? Maybe that would be the ideal situation. But even so, you have to go back and say, why do we have revestment? Because if you allow it in this case and you allow it in the other cases, you will never have finality of judgments, and Rule 606B, the second prong of 606B, which says a timely post-judgment motion and then a timely notice of appeal, why would anybody bother to comply with it? If everybody's going to let them give them a free pass for messing up. Oh, it was on my secretary's desk. Oh, gee, I was on vacation, I forgot. It doesn't matter what people are saying. Why should anybody? It would if we tie it to the facts, and the fact is the state never said, we object. And that seems to be a rather critical issue here. But are they attacking the judgment? That's equally critical. Actually, it's more critical because let's go back to find out why we have revestment. It's to right a wrong. It's not to give you yet one more bite at the apple. If I understand your argument correctly, that if there is two paragraphs in a judgment and one party believes that the first paragraph is wrong, but the second party believes that it is right, but the second party believes that the second paragraph is wrong, but the first party thinks it's right, then we don't have revestment. Is that your argument? No. We do? Because both parties are attacking the judgment. No, because both parties aren't agreeing that it's wrong where they claim it's wrong. One claims it's wrong here. The other claims it's wrong here. What you've been saying, I believe, at least as I understand it, is in order to have revestment, both parties have to agree that the same error occurred and they both want to change the same paragraph. I didn't say that. You said there was an error and they agree, quote, unquote. Well, they're not agreeing because one is saying A is wrong and the other one is saying B is wrong. So they're not agreeing that there's something wrong. They are contending that there are two things wrong. There is no agreement between them, and therefore there cannot be revestment. And nothing says, and there is no case law that says they have to agree that the same issue is wrong. But both of them are coming in and saying you're attacking the judgment. I didn't say there wasn't a case law. I'm saying that's what your argument seems to be saying, which was they both agreed that error occurred and they're going to correct the judgment. Yes. Well, if they're going to correct the judgment, how are they going to correct the judgment, under my hypothetical, when they're both disagreeing as to what the other party is contending? Well, because you don't go in and say, oh, Judge, this is wrong, please correct it, and then we're done with it. It says, I can't remember if it's Kading or if it's, I think it's in Kading or it could be in Justice Kapala's dissent. What you have to come in is you either get to have, either you come in and you agree this is the problem, let's fix it, or this is the problem and there's argument on it and then the judge decides how to fix the problem. So in both cases, you can both come in and say, I think there's error here. And the other side can say, I think there's error here. And the judge can sit there and listen to the arguments on both. So now there's two instances where revestment can occur. There's the instance that I believe Justice Kapala said in his dissent, where both parties agree that the same paragraph is wrong and that singular paragraph should be changed. And then you're contending that this is the other situation, which is when both parties agree there's something wrong with the judgment, but they don't necessarily agree what it is. I think I'm answering your hypothetical by saying, yes, revestment can occur there, and I'm disagreeing with you to the extent that I don't think Justice Kapala or any of the other cases specifically said they both have to agree on what the error is. I thought you just said it during oral argument about five minutes ago. That's the reason I raised my hypothetical, was because you were talking about there was an injustice and it was going to be corrected. Okay. And that they were both suggesting that the judgment was wrong. And then I suggested to you, well, what about the situation where they both agree that the judgment is wrong, but they don't necessarily agree about where the thing is wrong and whether or not an error has been committed in the area in which they say it is. But what seems to be the problem with that, Justice McClaren? I mean, if they're both agreeing there's something wrong with the judgment, what's wrong with fixing it below where both opponents are? Well, I think what Kapala said, it doesn't revest jurisdiction. Sure it does. Sure it does. You're attacking an error in the judgment. No, because as you said in your oral argument, you said they're going to agree and stipulate to alter and amend the judgment. In my hypothetical, there's no stipulation to alter and amend the judgment. I don't mind you arguing that it's a logical extrapolation to say that in my hypothetical, because they're both attacking the judgment, that therefore revestment applies. But what you said isn't what I said, and Kapala didn't say what you said, or I should say it another way. What you were saying before was based upon the idea that there had to be total and abject agreement as to what it was that the new judgment was supposed to be. Well, if that's what you interpreted me as saying, maybe I implied it that way, and maybe I even thought that way, and I would concede to your hypothetical, which I did not think of, but I am agreeing. That's revestment also. Because it's not – but that's not what happened in this case. Because what happened in this case is they said, you know, we screwed up, we didn't get the thing filed on time, let's go back in and look at this – look at our complaint, our – meaning the defendant's complaint with the judgment. That's not what revestment is, because then, again, you'll get all kinds of problems. You will never – you're just sweeping it out. You know, there's a way to resolve an attorney not filing a motion to reconsider in a timely manner. You file – you suck it up, and you go in for your client, and you file a post-conviction petition for that person, and the state won't come in and disagree that that's not an effective assistance to counsel. It's per se. Could we adjust the merits, assuming that the law is unconstitutional? Should there be a remand for a resentencing, or should we enter a judgment for 12 years? No, I think there should be a remand. And the reason for that is because in Hochschild – in their reply brief, the defendant distinguishes Hochschild by saying, well, Hochschild, they had other – they were looking at the – they referred to looking at the totality of the judgments. But I went back and looked at Hochschild and said, well, did they really say that? But at the very end of Hochschild, where they're holding this, they say, therefore, we hold. When an amended sentencing statute has been found to violate the proportion of penalties clause, the proper remedy is to remand for resentencing in accordance with the statute as it existed prior to the amendment. They don't condition it on the fact that they're going to look at the totality. And when you look at that, they cite to other cases, including a Supreme Court case that goes back – People v. Gersh is one of the cases, a Supreme Court case, where the same language comes in. They say, this is how we resolve the problem. If it goes back to the trial court, what's the maximum sentence the trial court can render? 30 years, because it's a whole new sentencing. And the difference between – I can't remember the name of the case that was set up as a difference. And in our case, the sentence that was under the – that was incorrectly done was always within the 6 to 30 years. You're saying that – And I would like to address the Church of Rio case and why we think that this case has problems. First of all, when we addressed the issue initially, I said that we felt that it had been waived. And the reason we felt that the issue had been waived, because even though this is a reasonable doubt, if they couch it as a – the defendant couches it as a reasonable doubt issue, we're couching it as an instructions issue. It's sort of a chicken-or-the-egg type of thing, and I myself haven't quite resolved that kind of circle. But I'm looking at it this way. When we came in and instructed the jury, there was no objection to how these jury instructions were going to be written. So the defendant, to come back now and say, well, you know, you didn't find me guilty beyond a reasonable doubt, because now I'm telling you that you did this wrong. Well, where were you when the jury instructions were going on? Did these jury instructions follow Church of Rio? No. Well, that's very interesting, because when I went back and looked at the jury instructions, they refer to Griffin. And even online, when you look, they don't reference Church of Rio, even though it's been out for a while. And when you look at Griffin, what Griffin says is, you know, this is one instance. They don't say every instance where defendant or one for whom he is responsible, that extra language should be put in. But there's a bigger problem with this. Well, first of all, also in regard to the waiver issue, I recognize that under Supreme Court Rule 451C, the court can come back and say, well, yes, but you really can't waive something when there's an interest of justice. But it also says in that, you can't waive it when there's a substantial defect in the instruction. There's no substantial defect in the instructions as they were given, because they followed the IPI. It's not like they gave something that was completely wrong. The IPI is vague. It says in some instances, in some cases where accountability is involved, you may not want to include the language or one for whom he's responsible. In Church of Rio, the conviction was affirmed, was it not? No, I can't remember. It was. I think it was reversed. I don't remember. I believe it was affirmed. Pardon me? I believe it was affirmed. Okay. The defendant was found guilty of possession of a firearm by a felon, because it was proven that the person who he was accountable for was in fact a felon. You know, I think that it was reversed. I think it was reversed because there was a contemplation of a PLA and it didn't happen. I would have to look on that. The other problem with what's going on with Griffin and with the Church of Rio case is this. It stands, first of all, if you're going to apply, if you're always going to say when there's an accountability issue involved with a status, and in Griffin it was the status of who is what age, is the person committing the sexual assault on this child over the age of 17, which aggravates it, or in this case is the person who has the gun also a felon? Well, the problem is if you say that it has to be that person, then you have this hypothetical. I'm 16 years old. I'm held accountable for a felon, and I'm not a felon, but I'm held responsible for UUW felon based on the status, something I can't control, of the person who has the gun. I believe that's what happened in Church of Rio, so are you telling me that Church of Rio was wrong? I'm telling you that Church of Rio was wrong. We're saying that Church of Rio was wrong. We decide that you have to prove that the principal has to be proven up as the one who's holding the gun. Let's flip it around, as in this case. If Mr. Church of Rio filed a petition for habeas corpus relief or for some form of relief, would you be willing to, assuming it came from DuPage County, execute a confession of error on that basis? I can't even address this because I don't know the basis for the horror. I'm sorry. I can't address that question. I'd be happy to research it and get back to you on it, but I've never really dealt with habeas corpus relief, and I'd have to see what the issue would be. But in this case, what we're saying, and in the Griffin case what we're saying, is that if the person himself involved is the felon or the person himself is over the age of 17, as in Griffin, they can't be held responsible for their conduct when this is happening. That's what's happening in this case when you say it has to be the conduct of the other person. So you're gutting accountability whenever status is involved in a case, and that just shouldn't be. But isn't it the basic premise, a charge based upon accountability must necessarily flow from the principal crime at issue? But when they talk about the crime, they're also talking about conduct, and conduct is the act of holding the gun. Conduct is the act of sexually assaulting the child. Status is defined differently than conduct, and that's where the problem comes in. And also when you look at the IPIs and the committee notes to the IPI, they don't say in every single case you cannot say defendant or one for whom is responsible. What's happening now with the ruling in Chucho Rio is really you would have to say, well, then how do I write the IPI to ever get accountability? You can't say defendant because you're saying it has to be the principal has the gun or the principal committed the sexual act. So you come in and say, I mean, I don't even have to word an IPI that says not the defendant, but the guy for whom he's responsible had the gun or were over the age of 17. But that's not the IPI does not tell you that that's an alternative that they want you to do. So if that's not what the IPI is telling you to write it in a different way, either you have to come up with a non-IPI or you can never hold anybody accountable on the basis for the status crime, for their own status being the thing that triggers the offense. The other thing is in Chucho Rio what the court came back and said is so charge the guy if you want to. Here's an option. Charge the person for UUW felon based on constructive possession of the gun. But you can't always do that. In this case, you couldn't have constructive possession. Constructive possession happens when the gun's in the bureau door and three people live in the house and two are in the bedroom and who has access. Our defendant in this case never had access to the gun. He was in a truck. The guys who had the gun were in another truck. They were even on the same street half the time. So that's why we think that this case should be reviewed. And in regard to the necessity and the compulsion instructions, we stand on our brief. We also say that it is not an overall review for the reasons set forth in Sims, which distinguishes Everett. There was no choice between two evils. This person always had the ability to withdraw. He didn't withdraw. He had many opportunities to withdraw. He had two opportunities to go to the police and say, help me, I'm involved in this crime. And the case which they put into their reply brief, Unger, does not distinguish the case at all because in Unger it was a felon who had escaped from the Department of Corrections. He was afraid of sexual assault, which was the reason there was a whole list of reasons, of things that had to go on in that case. And one of the things that they were saying in Unger was, well, the guy didn't call the police until two days later to see. But that's not the same circumstance as what's going on here. Thank you, counsel. Thank you very much. I apologize. You indicated in your brief that you agree that the defendant is entitled to one day of credit. Is that correct? That is correct. But based upon your argument that we lack jurisdiction, we should dismiss the appeal and not get credit for one day. You can't. If you dismiss the appeal for lack of jurisdiction, all you have is jurisdiction to say you have no jurisdiction over the case and they have to attack it in a post-medical position. Thank you. Ms. Groves. Really briefly, because there was some issue about Chicharillo, whether it affirmed or— According to my copy of Chicharillo, it says, The State, by failing to establish Tiffany, who was the co-defendant, her guilt of the crime charged, failed to prove defendant guilty of unlawful possession of a weapon by a felon under accountability theory. And then the court goes on to say, For these reasons, we reverse defendant's conviction for unlawful possession. So the possession's conviction was reversed. What was affirmed was the residential burglary conviction. So unless there are any questions, I'll rest on my briefs. Thank you very much, counsel. The court will take the matter under advisement and render a decision in due course. At this time, the court is adjourned for the day.